1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   NICK CANCILLA, et al.,                    No. C 12-03001 CRB

12              Plaintiffs,                     **ORDER GRANTING DEFENDANT'S
                                                MOTION FOR SUMMARY
13        v.                                    JUDGMENT**

14   ECOLAB INC.,

15              Defendant.
     _____/

16

17        Defendant Ecolab, Inc. has filed a motion for summary judgment based on <u>res

18   judicata</u>.  <u>See generally</u> D MSJ (dkt. 128-1).  Defendant argues that a prior action, <u>Ladore v.

19   Ecolab, Inc.</u> ("<u>Ladore</u>"), bars the California Named Plaintiffs, Nick Cancilla and Greg Jewell

20   (collectively, "Plaintiffs"), from bringing the California class allegations.  Because the

21   current action arises from the same nucleus of operative facts and Plaintiffs could have

22   brought the current claims in <u>Ladore</u>, the Court GRANTS Defendant's Motion.

23   **I.        BACKGROUND**

24        **A.        Plaintiffs' Employment with Defendant**

25        Defendant Ecolab, Inc. is an international sanitation company which provides

26   sanitation and pest control supplies and pest elimination services.  Compl. (dkt. 1) ¶ 9.

27   Plaintiff Nick Cancilla worked for Defendant as a Service Specialist Trainee from mid-

28   September 2008 to mid-January 2009, and then as a Service Specialist until his termination

     in

1   August 2010.  Fourth Am. Compl. (dkt. 119) ¶ 48.  Plaintiff Greg Jewell worked for

2   Defendant as a Service Specialist Trainee from May 2012 to September 2012, and then as a

3   Service Specialist until his termination in February 2013.  Id. ¶ 49.  As Trainees, Plaintiffs'

4   duties included attending classroom trainings, shadowing Service Specialists, and performing

5   pest fumigation and control services for customers.  Id. ¶ 67.  As Service Specialists,

6   Plaintiffs' duties consisted of contacting customers and performing pest fumigations.  Compl.

7   ¶ 22.  Trainees are compensated with a monthly salary; Service Specialists are compensated

8   every two weeks with a set salary plus additional payments for accounts serviced during the

9   pay period.  Id. ¶ 19.  As Plaintiffs note, most Trainees go on to become Service Specialists

10  after their Trainee period.  P Reply Mot. Transfer Venue (dkt. 27) at 5.

11      **B.    Cancilla Case History**

12      Plaintiff Cancilla brought a collective class action against Defendant on June 11,

13  2012.  Compl.  The initial complaint was brought on behalf of all persons who worked for

14  Defendant in California as Service Specialists and Service Specialist Trainees in the four

15  years prior to filing the Complaint.  Id. ¶ 30.  The complaint alleged violations of the Fair

16  Labor Standards Act ("FLSA") and various California Labor Code sections, including failure

17  to pay overtime, failure to provide missed meal period wages, and failure to provide semi-

18  monthly itemized statements.  Id. ¶ 2.  In the initial complaint, Plaintiff asserted that the case

19  arose from Defendant's "unlawful policy and practice of treating Plaintiff and putative class

20  members as exempt from legal obligations . . . notwithstanding that they are not, nor have

21  they ever been, exempt from overtime."  Id. ¶ 6.  However, Defendant's Answer stated that

22  Trainees are not classified as exempt (although Specialists are), and Plaintiff never reported

23  overtime when he was a Trainee.  Answer to Compl. (dkt. 5) ¶¶ 2, 25.  Defendant filed a

24  motion to stay proceedings on July 30, 2012, on behalf of Service Specialists because it was

25  "duplicative of recently certified class action claims pending . . . in Doug Ladore v. Ecolab,

26  Inc."  Mot. to Stay (dkt. 13).  The parties stipulated on August 10, 2012, to an amendment to

27  limit the class to California Service Specialist Trainees.  Stipulation (dkt. 16).  Thus, when

28  Plaintiffs filed the Fourth Amended Complaint on March 27, 2014, the California class

2

1    allegations included only <u>Service Specialist Trainees</u>,[1] and Plaintiffs alleged that Defendant

2    had a "policy and practice of willfully failing to pay them and all California Trainee Class

3    members . . . for all overtime hours worked, in violation of California law."  Fourth Am.

4    Compl. ¶ 13.  Different named plaintiffs represent the FLSA claims.  <u>Id.</u>

5           **C.     <u>Cancilla</u> California Class Allegations**

6           The <u>Cancilla</u> suit alleges violations of federal, California, and other state labor laws.

7    <u>Id.</u>  The claims at issue in Defendant's motion for summary judgment are <u>only</u> the California

8    class claims,[2] which consist of failure to pay overtime wages, keep accurate records of

9    employees' hours worked, provide uninterrupted 30-minute meal periods, and provide wages

10   earned and due at the time of termination, under the California Business and Professional

11   Code and California Labor Codes ("<u>Cancilla</u> claims").  D MSJ at 1-3; Fourth Am. Compl.

12   ¶ 119.  The proposed class is Service Specialist Trainees who worked for Defendant in

13   California between June 11, 2008 and the present.  Fourth Am. Compl. ¶ 119.

14          **D.     <u>Ladore</u> Action and Settlement**

15          <u>Ladore</u> followed two California state court class actions, <u>Roe v. Ecolab, Inc.</u>

16   and <u>Dietz v. Ecolab, Inc.</u>, which contained similar allegations and were filed on

17   behalf of the same class members as <u>Ladore</u>.  RJN (dkt. 128-3) Ex. 4 at 2.  The

18   previous California actions alleged that Ecolab failed to pay overtime wages and

19   comply with other California wage and hour laws; both cases settled.  <u>Id.</u>  The

20   plaintiff in <u>Ladore</u> filed a class action suit on October 7, 2011 in the Central District

21   of California against Ecolab, Inc.  RJN Ex. 1 ¶ 5.  The plaintiff alleged failure to

22   provide overtime wages and other violations of California labor laws on behalf of all

23   current and former "Senior Pest Elimination Service Specialists, Pest Elimination

24   Service Specialists, and Select Segment Specialists employed by Defendant Ecolab

25   Inc. in California from October 7, 2007 to the present."  <u>Id.</u>  The class made no

26   _____

27          [1] Plaintiffs added Greg Jewell as a California Named Plaintiff on October 15, 2013.  Third Am. Compl. (dkt. 96) ¶ 57.  Jewell represented the proposed "California Trainee Subclass."  <u>Id.</u>

28          [2] The FLSA and other state law labor claims (i.e. Washington) are not at issue in Defendant's Motion, and this Order does not affect those other claims.  <u>See</u> D MSJ at 1-3.

1  mention of Trainees.  Id.  The plaintiff brought the claims under various California

2  Labor Codes, including the same section violations alleged in this case, and alleged

3  that class members were not paid overtime because they were misclassified as

4  exempt based on a "motor carrier exemption."  See id. ¶¶ 6, 10-36.

5       The parties in Ladore came to a settlement agreement and on November 12,

6  2013, the district court approved the final Ladore Class Action Settlement.  RJN

7  Ex. 4.  The settlement included a release of claims, which barred class members who

8  had not validly objected to, or opted out of, the settlement agreement from bringing

9       any and all claims . . . causes of action and allegations of any nature, known or
         unknown, suspected or unsuspected, that were alleged or that could have been
10       alleged in the Complaint based on the facts alleged therein and that arose or
         could have arisen out of the facts alleged therein, including the claims brought
11       and the claims that could have been brought . . . including, but not limited to,
         all claims for wages. . . that were alleged in the Complaint or which could
12       have been alleged therein, including, without limitation: . . . (5) failure to pay
         . . . overtime wages for all hours worked, either under the California Labor
13       Code or the FLSA . . . from October 7, 2007 through June 30, 2013.

14  Cunningham Decl. (dkt. 128-2) Ex. B (emphasis added).  However, per the

15  settlement agreement, class members did not release any claims asserted in the

16  California state court cases of Cooper v. Ecolab and Icard v. Ecolab, two other

17  employment class actions, except for Labor Code § 203 penalties.  Cunningham

18  Decl. Ex. B.  Cancilla, which had been filed earlier in the year, was not named in the

19  limitation.  See id.

20       Plaintiffs in Cancilla were class members in Ladore and did not object to or

21  opt out of the settlement agreement.  Cunningham Decl. Ex. B, Ex. C.  Both signed

22  the settlement agreements and received settlement amounts of $23,900 and $8,411

23  respectively.  Id.  Defendant moves for summary judgment, arguing that Plaintiffs are

24  "bound by the final judgment approving the Ladore settlement" and are precluded

25  from bringing the Cancilla claims.  D MSJ at 7.

26  **II.    LEGAL STANDARD**

27       Summary judgment is proper when "the movant shows that there is no

28  genuine dispute as to any material fact and the movant is entitled to a judgment as a

4

United States District Court
For the Northern District of California

1  matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is a

2  sufficient evidentiary basis on which a reasonable fact finder could find for the

3  nonmoving party, and a dispute is "material" only if it could affect the outcome of

4  the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

5  248-49 (1986).  A principal purpose of the summary judgment procedure "is to

6  isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477

7  U.S. 317, 323-24 (1986).  "Where the record taken as a whole could not lead a

8  rational trier of fact to find for the non-moving party, there is no 'genuine issue for

9  trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

10 **III.    DISCUSSION**

11      Defendant moves for summary judgment on Plaintiffs' individual claims

12 based on res judicata, or claim preclusion, because of the Ladore action.  D MSJ at

13 7-8.  Defendant also argues that because Plaintiffs released the claims alleged in

14 Cancilla and were not employed after the Ladore release period's end date of June

15 30, 2013, they cannot adequately represent the California class.  Id. at 7-8, 11-12.

16      **A.    Res Judicata**

17      The Court first addresses Defendant's argument as to res judicata.  Res

18 judicata bars subsequent claims that "could have been asserted, whether they were or

19 not, in a prior suit between the same parties." Int'l Union of Operating Engineers-

20 Employers Constr. Indus. Pension, Welfare, & Training Trust Funds v. Karr, 994

21 F.2d 1426, 1429 (9th Cir. 1993) (quoting Ross v. Int'l Bhd. of Elec. Workers, 634

22 F.2d 453, 457 (9th Cir. 1980)).  The Supreme Court has recognized that the doctrine

23 of res judicata serves the "vital public interest" of having an end to litigation,

24 especially in "view of today's crowded dockets." Federated Dep't Stores, Inc v.

25 Moitie, 452 U.S. 394, 401 (1981).  To determine whether a previous suit bars present

26 claims, the earlier suit must have: (1) an identity of claims as the later suit; (2)

27 reached a final judgment on the merits; and (3) identical parties or privies as the later

28 suit. Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005).

1            **1.**     **Identity of Claims**

2         The Ninth Circuit has articulated four criteria that courts should consider, but

3 not "apply mechanistically," when evaluating if there is an identity of claims: "(1)

4 whether the suits arise out of the same transactional nucleus of facts; (2) whether

5 rights or interests established in the prior judgment would be destroyed or impaired

6 by prosecution of the second action; (3) whether the two suits involve infringement

7 of the same right; and (4) whether substantially the same evidence is presented in the

8 two actions." Mpoyo, 430 F.3d at 987 (citing Chao v. A-One Med. Servs., Inc., 346

9 F.3d 908, 921 (9th Cir. 2003)). The first criterion is the most important and is

10 outcome determinative, as it "assures the two suits involve the same claim or cause of

11 action." See Mpoyo, 430 F.3d at 988; see also Int'l Union, 944 F.2d at 1430 (noting

12 that res judicata can be applied on the ground that the two claims arose out of the

13 same transaction, without reaching the other factors). To evaluate the first criterion,

14 also known as the "common nucleus criterion," the Ninth Circuit uses a "transaction

15 test," which determines whether the two claims are related to the same set of facts

16 and if they could conveniently be tried together. Mpoyo, 430 F.3d at 987 (quoting

17 Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992)). The Court first

18 addresses the relevant case law and then applies it to this case.

19                **a.**     **Relevant Case Law**

20         Three cases guide the Court's analysis.

21         In Mpoyo, the Ninth Circuit held that there was an identity of claims because

22 the claims were related to the same set of facts and formed a convenient trial unit.

23 Mpoyo, 430 F.3d at 987, 988. In Mpoyo, plaintiff first brought a Title VII action

24 against his employer, and two years later, filed an entirely new action alleging FMLA

25 and FLSA claims. Id. However, the court held that both actions arose from the

26 employer's conduct and plaintiff's termination and thus were related to the same set

27 of facts. Id. at 987. Further, the claims formed a convenient trial unit that

28 "disclose[d] a cohesive narrative of an employee-employer relationship and a

**United States District Court**
For the Northern District of California

1  controversial termination." <u>Id.</u>  As such, even though the court found that

2  "examination of the latter three criteria [did] not yield a clear outcome," because the

3  first criterion was satisfied, there was an identity of claims.  <u>Id.</u> at 988; <u>see also</u> Int'l

4  <u>Union</u>, 994 F.2d at 1429-30 (holding there was an identity of claims between a claim

5  to recover delinquent payments and an earlier claim to recover accurate payments

6  because the claims formed a convenient trial unit and were premised on the same

7  alleged activity).

8      Also relevant is <u>Prieto v. U.S. Bank Nat'l Ass'n</u>, No. CIV S-09-901 KJM

9  EFB, 2012 WL 4510933 (E.D. Cal. Sept. 30, 2012).  The suit in <u>Prieto</u> was for failure

10  to pay overtime based on misclassification, but there was a previously settled class

11  action suit against the same defendant for failure to pay overtime (and the plaintiff

12  did not opt out of the settlement agreement).  <u>Id.</u> at *2.  The court found that the

13  misclassification suit was not barred by <u>res judicata</u>, finding it significant that

14  different harms resulted from the two cases.  <u>Id.</u> at *8.  Although there was "much

15  overlap" in the two actions through the similarity of facts and the Labor Code

16  violations, because the harm that flowed from the alleged misclassification was

17  different from the harm that flowed from refusal to pay overtime to a properly

18  classified employee, <u>res judicata</u> did not bar the second suit.  <u>Id.</u> at *9.

19      <u>Prieto</u> is not consistent with <u>Mpoyo</u>.  First, in <u>Mpoyo</u>, the Ninth Circuit held

20  that although cases might address different rights and harms, this was not conclusive

21  as to whether there was an identity of claims.  430 F.3d at 987.  Second, in <u>Mpoyo</u>,

22  the court's view as to what constituted the "same cause of action" was not as narrow

23  as that of the court in <u>Prieto</u>.  <u>See id.</u>; <u>Prieto</u>, 2012 WL 4510933, at *8.  <u>Mpoyo</u> held

24  that although the claims did "arguably address different <u>particular</u> rights," it was

25  enough that the two cases involved the "same <u>overall</u> harms and <u>primary</u> rights" and

26  that the claims arose from the "same transaction, or <u>series of transactions</u> as the

27  original action."  430 F.3d at 987 (emphasis added).  If <u>Mpoyo</u> used the same narrow

28  standard as in <u>Prieto</u>, it would have concluded that the harm from discrimination is

7

distinct from failure to pay overtime, and the latter suit would not have been barred. It did not so hold. Accordingly, the Court will not follow <u>Prieto</u>.

Finally, the Ninth Circuit in <u>Chao</u> held that when determining whether there was an identity of claims, it was not necessary to know exactly which legal theory or statute a plaintiff was proceeding under, but only whether the plaintiff pursued the same claim and if that claim could and should have been raised in the prior action. 346 F.3d at 908. In that case, the Secretary of Labor brought a suit to recover unpaid overtime wages on behalf of former employees of the defendant. <u>Id.</u> at 911. Two of the employees had previously been involved in a lawsuit with the defendant, in which one plaintiff counter-claimed for unpaid overtime and the other asserted that she was due overtime but did not make a claim for it. <u>Id.</u> at 920. The court held that the Secretary's claim on behalf of the first plaintiff, but not the second, was barred, since the first plaintiff pursued the same claim in the prior action—it was not significant under "which statute or theory she was proceeding." <u>Id.</u> at 920-22.

**b.      Application of Case Law to <u>Cancilla</u> Claims**

**i.      First Criterion: Same Nucleus of Facts**

This case arises out of the same transactional nucleus of facts as <u>Ladore</u>, because the two cases are related to the same set of facts and could be conveniently tried together. As in <u>Mpoyo</u>, where the Title VII and FMLA/FLSA claims arose from the employer's conduct leading to termination, both <u>Ladore</u> and this case arise from Defendant's failure to pay overtime to its current and former employees who performed pest elimination duties. <u>See</u> <u>Mpoyo</u>, 430 F.3d at 987. The time periods in <u>Ladore</u> and this case overlap, from October 7, 2007 through June 30, 2013 in <u>Ladore</u>, and from June 11, 2008 to the present in this case. <u>See</u> Fourth Am. Compl.; RJN Ex. 1 ¶ 5. Though Plaintiffs' counsel argued at the motion hearing that Trainees and Service Specialists have different job positions, the two positions' duties are functionally similar: both perform pest elimination services. <u>See</u> Fourth Am. Compl.

<div style="writing-mode: vertical">United States District Court<br>For the Northern District of California</div>

1    ¶ 67; Compl. ¶ 22.  Further, as Plaintiffs contend, most Trainees go on to become

2    Specialists.  See P Reply Mot. Transfer Venue at 5.

3         Plaintiffs' counsel also argued that the claims in Ladore and this case are

4    distinct—in Ladore, the claim was whether Service Specialists were misclassified,

5    and here the claim is that Trainees are forced to work off the clock and given

6    inaccurate wage statements.  But the same nucleus of operative facts does not mean

7    that the claims must arise from the exact same set of facts.  Both cases are based on

8    the alleged failure of Defendant to pay overtime pursuant to California Labor Code

9    section 510, which states that overtime must be paid for "[a]ny work in excess of

10   eight hours in one workday."  See Cal. Lab. Code § 510(a).  The statute does not

11   distinguish between the type of wrongdoing, or the theory of recovery, for the unpaid

12   overtime.  See Cal. Lab. Code § 510.  As in Chao, where the uncertainty of what

13   legal theory upon which the plaintiff based her claim did not "obscure the fact that

14   [plaintiff] admittedly pursued a claim for unpaid overtime," Plaintiffs' choice of legal

15   theory, misclassification or refusal, does not "obscure" the fact that Plaintiffs are

16   pursuing the same claim for unpaid overtime.  See Chao, 346 F.3d at 922.

17        Moreover, because this case could have easily been litigated in the first action,

18   the Ladore and Cancilla claims form a convenient trial unit.  See Mpoyo, 433 F.3d at

19   987.  "Different theories supporting the same claim for relief must be brought in the

20   initial action."  Id. at 988.  Similar to Mpoyo, Ladore and this case form a "cohesive

21   narrative of an employee-employer relationship" and a failure to pay overtime wages.

22   See id. at 987.  Plaintiffs could have intervened or timely filed a motion to amend the

23   Ladore complaint to include the Cancilla claims.[3]

24        The Court thus finds that the first criterion under the identity of claims factor,

25   which the Ninth Circuit has held to be outcome determinative, is satisfied.  See id.

26   //

27

28        [3]   Plaintiffs could also have opted out, objected, or attempted to carve out "Trainees" from the
     Ladore settlement agreement, but did not do so.

United States District Court
For the Northern District of California

1

### ii.      Second and Third Criteria: Same Rights

2          This case and <u>Ladore</u> involve the same rights, satisfying the second and third

3    criteria of whether the rights established in the prior judgment would be destroyed by

4    prosecution of the second action and whether the two suits involve infringement of

5    the same right.  <u>See id.</u>  Plaintiffs contend that the rights of Trainees are distinct from

6    those of Specialists.  P Opp'n (dkt. 133) at 9.  However, the relevant "right" here is

7    the right to be paid overtime when entitled to it, a right that is not distinguishable

8    between Trainees and Specialists.  As Defendant argues,

9          If an employee works nine hours on a particular day, but is not paid overtime,
      it matters not whether the employee was misclassified as exempt, whether the
10     employee was discouraged from reporting the time or whether the manager
      wrote off the time after the fact . . . Regardless, <u>the claim is for one hour of</u>
11     <u>unpaid overtime</u> and the harm is the non-payment of one hour of overtime.

12    D Reply at 8 (emphasis added).  Additionally, prosecution of this case would also

13    infringe on Defendant's right to end litigation and put to rest "California wage and

14    hour claims."  <u>See</u> D MSJ at 8.

15          As such, the Court finds that the second and third criteria of the identity of

16    claims factor is satisfied.

17

### iii.      Fourth Criterion: Overlap of Evidence

18          There is also a substantial overlap of evidence between the two suits, thereby

19    satisfying the fourth criterion under the identity of claims factor.  Although some

20    evidence in <u>Ladore</u> and this case might be distinct—such as evidence of whether the

21    plaintiffs in <u>Ladore</u> carried hazardous materials—much of the evidence will be the

22    same.  Both actions rely on payroll and employment records, job activities, and

23    Defendant's overall practice of paying overtime.  <u>See</u> D Opp'n Mot. Transfer Venue

24    (dkt. 22) at 5; D MSJ at 9; D Reply at 3.

25          Accordingly, the Court finds that the fourth criterion is satisfied, and

26    concludes that there is an identity of claims between <u>Ladore</u> and this case.

27    //

28    //

10

**United States District Court**
For the Northern District of California

### 2.    Final Judgment on the Merits

Res judicata also requires a final judgment on the merits in the first case. Mpoyo, 430 F.3d at 987.  An approved settlement constitutes a final judgment on the merits.  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006).  Accordingly, there was a final judgment on the merits in Ladore.

### 3.    Privity of Parties

The final requirement of res judicata is privity of parties.  Mpoyo, 430 F.3d at 987.  In a class action settlement, plaintiffs are parties to any prior action by "virtue of their membership in the class and appearance through counsel at the fairness hearing."  Reyn's, 442 F.3d at 747.  In this case, Plaintiffs were members of the Ladore settlement class, and most Trainees go on to become Specialists.  See P Reply Mot. Transfer Venue at 5.  Further, Defendant in both cases is identical.  Thus, there is a privity of parties.

### 4.    Public Policy Considerations

Public policy considerations also favor finding preclusion.  The Supreme Court has recognized that "public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest"—res judicata serves this interest by "avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined."  See Moitie, 452 U.S. at 401; Int'l Union, 944 F.2d at 1430. Allowing Plaintiffs to prosecute the Cancilla claims would allow Plaintiffs to adjudicate via "piecemeal litigation" and create incentives for plaintiffs to hold back claims for a second adjudication.  See Mpoyo, 430 F.3d at 989; Int'l Union, 944 F.2d at 1431.

Further, there is a public policy interest in preserving the sanctity of settlement agreements and the defendant's right to end litigation via settlement.  Employers, in drafting settlement agreements, cannot be expected to list every conceivable type of claim or legal theory.  Then an employer would "never be able to put a definitive end

United States District Court
For the Northern District of California

to the matter . . . [and] be disinclined to enter into settlements, because certainty as to the full extent of liability is one factor that motivates employers to choose settlement over litigation." See Villacres v. ABM Indus. Inc., 189 Cal. App. 4th 562, 589 (2010).  In this case, it is significant that the Ladore settlement specifically excluded two other existing class actions, Cooper and Icard, from the release of claims, but did not exclude this case.  See Cunningham Decl. Ex. B.  Further, because Plaintiffs could have, but chose not to, intervene or opt out of the settlement agreement, they are bound by it.  This is especially so because Plaintiffs were aware of the Ladore litigation from the beginning of this action.  See D MSJ at 6.

Based on the foregoing reasons, the Court finds that all elements of res judicata are satisfied.

**B.      California Class Allegations - Ladore Settlement Release**

Defendant next argues that not only are Plaintiffs' individual claims barred by res judicata, but the California class claims must also be summarily adjudicated and dismissed.  D MSJ at 2, 11.  Defendant argues that because Plaintiffs released all of their claims[4] in the Ladore settlement and were not employed by Defendant after Ladore's release period end date, they are not members of the California putative class and cannot represent the class.  D MSJ at 12.  The Court analyzes Defendant's argument under the "identical factual predicate" doctrine.

A settlement's broad release of liability may have preclusive effect on a party bringing a related claim in the future even if the claim "was not presented and might not have been presentable in the class action."  Hesse v. Sprint Corp, 598 F.3d 581, 590 (9th Cir. 2010) (citing Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008)).  Release will depend on whether the present claim is based on the "identical factual predicate as that underlying the claim" in the previous settled class action.  Id. The Ninth Circuit has held that a "superficial similarity" between the two claims is

---

[4] The argument assumes that Plaintiffs released all the California claims, and not the federal or other state claims.  See D MSJ.

**United States District Court**
For the Northern District of California

1    insufficient to justify release; rather, the inquiry must focus on whether the claims

2    depended on the same set of facts.  <u>Id.</u> at 590-91.  Courts also evaluate whether the

3    previous named plaintiff was an adequate representative for the claims asserted by

4    the current plaintiff.  <u>Id.</u> at 588.  Further, courts will bar claims brought on different

5    legal theories insofar as the underlying injuries are identical.  <u>Reyn's</u>, 442 F.3d at

6    749; <u>see also</u> <u>Williams</u>, 517 F.3d at 1134 (holding that a broad release settlement is

7    enforceable against "claims relying upon a legal theory different from that relied

8    upon in the class action complaint, but depending on the same set of facts").  Both

9    the identical factual predicate and <u>res judicata</u> doctrines focus on whether the causes

10   of action are similar.  <u>See generally</u> <u>McNeary-Callloway v. JP Morgan Chase Bank,</u>

11   <u>N.A</u>, 863 F. Supp. 2d 928, 949 (N.D. Cal. 2012) ("consistent with the Ninth Circuit

12   precedent . . . the Court will analyze the [preclusion] issue under the "identical

13   factual predicate"); <u>Prieto</u>, 2012 WL 4510933, at *1 (noting that a suit can be barred

14   by the earlier settlement of another suit in either of two ways: <u>res judicata</u> or release).

15           As already discussed, the <u>Cancilla</u> claims depend upon the same set of facts as

16   <u>Ladore</u>, the named plaintiff in <u>Ladore</u> was an adequate representative for the <u>Cancilla</u>

17   claims, and both actions' underlying injuries of unpaid overtime are identical—thus,

18   this case shares an identical factual predicate as <u>Ladore</u>.  <u>See</u> <u>Hesse</u>, 598 F.3d at 588,

19   590; <u>Reyn's</u>, 442 F.3d at 749.  Accordingly, the Court finds that Plaintiffs released

20   their claims and the <u>Ladore</u> settlement precludes the class claims.

21   **IV.    CONCLUSION**

22           For the foregoing reasons, the Court GRANTS Defendant's Motion.

23           **IT IS SO ORDERED.**

24

25   Dated: June 30, 2014

26   
     CHARLES  R. BREYER
     UNITED STATES DISTRICT JUDGE

27

28