JAMES M. FINBERG (SBN 114850)
EVE H. CERVANTEZ (SBN 164709)
CONNIE K. CHAN (SBN 284230)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
Email: jfinberg@altshulerberzon.com
Email: ecervantez@altshulerberzon.com
Email: cchan@altshulerberzon.com

STEVEN G. ZIEFF (SBN 84222)
DAVID A. LOWE (SBN 178811)
JOHN T. MULLAN (SBN 221149)
CHAYA M. MANDELBAUM (SBN 239084)
MICHELLE G. LEE (SBN: 266167)
**RUDY, EXELROD, ZIEFF & LOWE, LLP**
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513
Email: sgz@rezlaw.com
Email: dal@rezlaw.com
Email: jtm@rezlaw.com
Email: cmm@rezlaw.com
Email: mgl@rezlaw.com
Attorneys for Plaintiffs NICK CANCILLA, GREG JEWELL,
DAVID BEAUSOLEIL, PATRICK SWEENEY, LUCIO FLORES,
THOMAS JENNISON, MICHAEL EMANUEL, ROBERT BIRCH,
KENNETH FORBES, BRIAN O'NEIL, and FREDERICK SIMON,
And all others similarly situated
[*Additional counsel for Plaintiffs on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK CANCILLA, GREG JEWELL, DAVID BEAUSOLEIL, PATRICK SWEENEY, LUCIO FLORES, THOMAS JENNISON, MICHAEL EMANUEL, ROBERT BIRCH, KENNETH FORBES, BRIAN O'NEIL, and FREDERICK SIMON, on behalf of themselves and classes of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ECOLAB, INC., a corporation, <br><br> Defendant. | Case No. CV 12-03001 JD <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT** <br><br> Date:  December 9, 2015 <br> Time:  10:00 a.m. <br> Judge: Hon. James Donato <br> Complaint Filed:  June 11, 2012 <br> Trial Date:  Vacated |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT ECOLAB, INC. AND ITS COUNSEL OF RECORD AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on December 9, 2015, at 10:00 a.m., in Courtroom 11 on the 19th floor of this Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs David Beausoleil, Patrick Sweeney, Lucio Flores, Robert Birch, Thomas Jennison, Michael Emanuel, Kenneth Forbes, Frederick Simon, and Brian O'Neil ("Plaintiffs", "Representative Plaintiffs") will move and hereby move the Court for an order granting the following relief:

(1)     Confirming as final the certification of the state settlement classes (collectively referred to as the "State Settlement Classes") under FRCP 23, defined as follows:

| | |
|---|---|
| Colorado Class: | All Service Specialists who worked for Ecolab in the state of Colorado from June 12, 2006 through April 30, 2015. |
| Illinois Class: | All Service Specialists who worked for Ecolab in the state of Illinois from June 12, 2009 through April 30, 2015. |
| Maryland Class: | All Service Specialists who worked for Ecolab in the state of Maryland from June 12, 2009 through April 30, 2015. |
| Missouri Class: | All Service Specialists who worked for Ecolab in the state of Missouri from June 12, 2010 through April 30, 2015. |
| New York Class: | All Service Specialists who worked for Ecolab in the state of New York from June 12, 2006 through April 30, 2015. |
| North Carolina Class: | All Service Specialists who worked for Ecolab in the state of North Carolina from June 12, 2010 through April 30, 2015. |
| Washington Class: | All Service Specialists who worked for Ecolab in the state of Washington from June 12, 2009 through April 30, 2015. |
| Wisconsin Class: | All Service Specialists who worked for Ecolab in the state of Wisconsin from June 12, 2010 through April 30, 2015. |

(2)     Confirming as final the designation of the FLSA claim in this case as a collective action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA Opt In Class");

///

1

1        (3)    Confirming as final the appointment of Plaintiffs Beausoleil, Flores, Birch,

2   Jennison, Emanuel, Forbes, Simon, and O'Neil as the class representatives of the conditionally

3   certified State Settlement Classes pursuant to Fed. R. Civ. P. 23 and confirming Plaintiffs

4   Beausoleil and Sweeney as representatives of the FLSA Opt In Class;

5        (4)    Approving the Parties' class action settlement as fair, reasonable, and adequate,

6   and binding on all Class Members;

7        (5)    Directing the Parties and the Settlement Administrator to implement the terms of

8   the Agreement pertaining to the distribution of the Settlement Fund and Net Settlement Fund;

9        (6)    Making findings of fact and stating conclusions of law in support of the foregoing;

10  and,

11       (7)    Directing the entry of judgment in accordance with the Parties' Agreement,

12  pursuant to Fed. R. Civ. P. 54 and 58.

13       This Motion is based on the Parties' Joint Stipulation of Collective and Class Action

14  Settlement and Release (Dkt. No. 223-2), the accompanying Memorandum of Points and

15  Authorities, the declarations of John T. Mullan and Mark Patton (Senior Director of Operations

16  for Settlement Administrator, Settlement Services, Inc.), the proposed order filed herewith, the

17  other records and pleadings filed in this action, and upon such other documentary and oral

18  evidence or argument as may be presented to the Court at the hearing of this Motion.

19

20  DATED:  November 3, 2015                  Respectfully submitted,

                                             RUDY, EXELROD, ZIEFF & LOWE, LLP
21

22                                           By: _____/s/ John T. Mullan_____
                                                 JOHN T. MULLAN
23                                               Attorneys for Plaintiffs NICK CANCILLA,
                                                 GREG JEWELL, DAVID BEAUSOLEIL,
24                                               PATRICK SWEENEY, LUCIO FLORES,
                                                 THOMAS JENNISON, MICHAEL
25                                               EMANUEL, ROBERT BIRCH, KENNETH
                                                 FORBES, BRIAN O'NEIL, and FREDERICK
26                                               SIMON, and all others similarly situated

27

28

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. CV 12-03001 JD

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL HISTORY ..................................................... 3

    A.    Investigation, Negotiations and Settlement ............................................ 3

    B.    The Court Certified Classes for Settlement Purposes and Granted
         Preliminary Approval to the Settlement Agreement .............................. 4

    C.    Settlement Fund ...................................................................................... 4

    D.    Plan of Distribution to Class Members .................................................. 5

    E.    Release of Claims ................................................................................... 6

    F.    Settlement Administration ...................................................................... 7

         1.    Class Notice ................................................................................ 7

         2.    There Were No Opt Outs ............................................................ 7

         3.    Counsel is Not Aware of any Class Member Objections to the
             Settlement or any of its Terms. .................................................. 8

         4.    One Class Member Challenged the Number of their Applicable
             Workweeks Printed on their Notice, which Challenge was, upon
             Review, Granted. ....................................................................... 8

III.   DISCUSSION ...................................................................................................... 8

    A.    Final Confirmation of Class Certification is Appropriate. ..................... 8

    B.    Final Settlement Approval is Appropriate.............................................. 9

         1.    The settlement is entitled to a strong presumption of fairness. ............... 10

         2.    The settlement is fair, reasonable, and adequate. ...................... 10

             a.    The strength of Plaintiffs' case and the risk of maintaining
                 class action status throughout the trial. ......................... 11

             b.    The risk, expense, complexity, and likely duration of further
                 litigation........................................................................ 12

             c.    Settlement amount. ........................................................ 12

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d.      Extent of discovery and investigation completed.......................... 14

e.      Experience and views of counsel. .................................................. 15

f.      Class Members' reactions to the proposed settlement. ................. 15

V.      CONCLUSION ............................................................................................... 16

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ................................................................2

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) ..............................16

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012), *cert. denied,*
    134 S. Ct. 8, 187 L. Ed. 2d 392 (U.S. 2013) ...........................................5

*Linney v. Cellular Alaska Partnership,*
    151 F.3d 1234 (9th Cir. 1998).............................................................14

*Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .........................................................15

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982)...............................................11, 12, 15

*In re Omnivision Tech., Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) (Conti, J.) ......................................9

*Ramirez v. Ghilotti Bros. Inc.,*
    941 F.Supp.2d 1197 (N.D. Cal. 2013) (Breyer, J.) ....................................6

*In re Syncor Erisa Litig.,*
    516 F.3d 1095 (9th Cir. 2008)..............................................................9

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993)..............................................................11

*Trew v. Volvo Cars of N. Am., LLC,*
    No. 05-1379, 2007 WL 2239210 (E.D. Cal. Jul. 31 2007) .................................10

*Wren v. RGIS Inventory Specialists,*
    No. 06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...........................10, 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes, Rules and Regulations**

Fedederal Rules of Civil Procedure
    Rule 23 .................................................................................................................*passim*
    Rule 23(a)...............................................................................................................2, 4, 9
    Rule 23(b)(3) ......................................................................................................2, 4, 8, 9
    Rule 23(e).....................................................................................................................1
    Rule 23(e)(2) ................................................................................................................9
    Rule 23(g)....................................................................................................................4
    Rule 30(b)(6) .............................................................................................................14

United States Department of Labor
    The Fair Labor Standards Act of 1938............................................................*passim*
    29 U.S.C. § 216(b)...................................................................................................2, 3, 6

United States Code,
    Federal Insurance Contributions Act (FICA) of 1935...............................................4

United States Code,
    The Federal Unemployment Tax Act (FUTA) .........................................................4

I. **INTRODUCTION**

In this collective and class action lawsuit, Plaintiffs request that the Court grant final approval of the Parties'[1] settlement of Plaintiffs' claims pleaded in the Fourth Amended Complaint pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Fair Labor Standards Act.  The settlement, in the amount of $7,500,000, is "fair, reasonable, and adequate" within the meaning of Rule 23(e).  The Class includes 1,053 individuals, comprised of 580 Service Specialists who have opted in to the FLSA collection action class, as well as an additional 473 Service Specialists in eight state classes under Colorado, Illinois, Maryland, Missouri, New York, North Carolina, Washington, and Wisconsin state laws.[2]  Class Members stand to recover substantial and immediate monetary benefits under the settlement.  As of this date, no Class Member has opted out, such that all Class Members will participate in the settlement.[3]  The class notice directed Class Members to send any objections to the Court.  Class Counsel is not aware of any objections filed by the Court, and neither counsel nor the settlement administrator have received any objections (Declaration of John T. Mullan In Support of Motion for Final Approval, ¶ 3; Declaration of Mark Patton In Support of Motion for Final Approval, ¶ 10).

The $7.5 million non-reversionary settlement satisfies the Ninth Circuit's standards for approval.  Class Counsel vigorously litigated this case over the course of three years, conducting extensive formal and informal discovery and engaging in active motion practice.  At the time the

---

[1]   All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Joint Stipulation of Collective and Class Action Settlement and Release (Dkt. No. 223-2).

[2]   Ecolab initially supplied the Settlement Administrator with a class list of 1,052 individuals.  One additional Class Member came to light during the notice period.  Class Counsel raised the issue with counsel for Ecolab, who concluded that the individual should properly be included in the Class.

[3]   Two Class Members initially requested to opt out of the settlement, but both individuals later rescinded those requests by providing written notice to the Settlement Administrator (Declaration of Mark Patton In Support of Motion for Final Approval, ¶ 9).  As a result, the two Class Members will participate in the settlement and will be subject to the same terms and conditions as other Class Members.

settlement was reached, the Parties had fully briefed Plaintiffs' motion for class certification of the Rule 23 State Classes, Ecolab's motion for decertification of the FLSA Collective Action Opt In Class, and Ecolab's motion for partial summary judgment.  Class Counsel were fully informed about the strengths and weaknesses of the claims of Class members at the time the settlement was negotiated.

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  It is uncertain whether Plaintiffs would have ultimately been able to have maintained the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal.  Even if Plaintiffs did prevail on liability, it is uncertain what amount they would have recovered for the Class.  Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed $7.5 million settlement, the proposed settlement is in the best interest of the Class.

The response of Class Members to the proposed settlement has been favorable.  To Class Counsel's knowledge, no Class Member has objected to the settlement.  Only two of the 1,053 Class Members opted out, and even those two later rescinded their opt-outs, so all Class Members have decided to participate in the settlement.  The lack of any objections and the fact that no Class Member ultimately opted out indicate that the Class has a favorable view of the settlement.  This factor too weighs in favor of final settlement approval.

In connection with requesting final settlement approval, Plaintiffs also request that the Court:  (1) confirm as final the certification of the eight state classes under Fed. Rules Civ. P. 23(a) and 23(b)(3); (2) confirm as final the designation of the FLSA claim in this case as a collective action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b); (3) confirm as final the appointment of Plaintiffs Beausoleil, Flores, Birch, Jennison, Emanuel, Forbes, Simon, and O'Neil as the class representatives of the conditionally certified State

2

1  Settlement Classes and confirm Plaintiffs Beausoleil and Sweeney as representatives of the FLSA

2  Opt In Class; and (4) enter the proposed order in the form submitted herewith and enter

3  judgment.

4  **II.      FACTUAL AND PROCEDURAL HISTORY**

5       **A.      Investigation, Negotiations and Settlement**

6            As described more fully in the Memorandum of Points and Authorities in support of

7  Plaintiffs' Unopposed Motion for Conditional Certification of State Classes and Preliminary

8  Approval of Class Action Settlement (Dkt. No. 223), the Parties engaged in extensive litigation

9  over the course of three years, including active motion practice and discovery.  Class Counsel

10 conducted a detailed factual investigation of the claims at issue in this case, interviewing

11 hundreds of individuals who had opted-in to the FLSA collective action (Declaration of James M.

12 Finberg In Support of Plaintiff's Motion for Preliminary Approval, Dkt. No. 223-1, ¶ 15).  The

13 parties also engaged in extensive formal discovery, including responding to written discovery

14 requests, production of documents (Defendant produced over 150,000 pages of documents in

15 response to Plaintiffs' requests), and taking or defending a total of 38 depositions in this case (*id.*,

16 at ¶¶ 16-17).

17            Many issues were hotly disputed, resulting in active motion practice, including cross-

18 motions for summary judgment on whether Defendant qualified for an exemption under FLSA

19 Section 7(i), Plaintiffs' motion for class certification of state law classes under Rule 23,

20 Defendant's motion to decertify the FLSA collective action, and Defendant's recently-filed

21 motion for partial summary judgment on the Section 7(i) exemption issue.

22            On May 8, 2015, the parties attended a mediation presided over by experienced mediator

23 Hunter Hughes (*id.*, at ¶ 22).  After lengthy negotiations, the parties agreed to the $7.5 million

24 non-reversionary settlement amount proposed by Mr. Hughes.  The material terms of a settlement

25 agreement were set forth in a term sheet signed by representatives for the parties at the mediation.

26 The parties spent substantial additional time over the following weeks ironing out the details of

27 the settlement (*ibid.*).

28 ///

**B.** **The Court Certified Classes for Settlement Purposes and Granted Preliminary Approval to the Settlement Agreement**

On August 12, 2015, the Court granted Plaintiffs' Preliminary Approval Motion (Order Granting Motion for Preliminary Approval, Dkt. No. 226). The Court's Order: (1) determined that the requirements of Rule 23 were satisfied for purposes of certifying the state classes under Rule 23(a) and Rule 23(b)(3) for settlement; (2) appointed the Plaintiffs as Class representatives under Rule 23 and appointed Plaintiffs' attorneys as Class Counsel under Rule 23(g); (3) preliminarily approved the Parties' class action settlement agreement, finding that it was "fair, reasonable, and adequate, and that it protects the interests of the class members" following lengthy negotiations and years of litigation (*id.*, at p. 5); (4) ordered that notice of the settlement be directed to the Classes in the form and manner proposed by the Parties; and (5) set December 9, 2015, at 10:00 a.m. as the time for the Fairness Hearing.

**C.** **Settlement Fund**

The Agreement preliminarily approved by the Court, and filed as Docket Number 223-2, provides for Ecolab to make a non-reversionary settlement payment to the Class of $7,500,000 to compensate Class Members, pay reasonable attorney's fees and costs (up to a maximum of $1,875,000 in fees and up to $150,000 in costs, as determined by the Court), pay service payments to the nine class representatives if the Court approves the request ($3,000 each, totaling $27,000)[4], and pay the costs of the Settlement Administrator (up to a maximum of $45,000) (Joint Stipulation of Collective and Class Action Settlement and Release, Dkt. No. 223-2, § IV.). In addition to the $7,500,000 Settlement Fund, Ecolab will also pay the employer's share of state and federal payroll taxes (*e.g.*, FICA, FUTA) on all amounts that are paid to Class Members for unpaid wages.

A reserve of $25,000 of the settlement fund will be set aside to address any processing errors and to ensure that all Participating Class Members receive at least $100 from the

---

[4] Plaintiffs have moved separately for an award of attorney's fees and costs and for an award of service payments, which motions will be heard at the Final Fairness Hearing (*see* Dkt. Nos. 227 and 228). In Plaintiffs' motion for attorney's fees and costs, Plaintiffs seek reimbursement of costs for only $135,601.83.

settlement.  Checks will be mailed directly to each Class Member – no further action is required for a Class Member to receive a check.[5]  Class Members have 120 days to cash the settlement checks.  If, after 120 days, the amount of uncashed checks and the reserve of the settlement fund total more than $30,000, the funds will be redistributed on a *pro rata* basis to Class Members who cashed their initial checks.  If the amount remaining from the uncashed checks and the reserve of the settlement fund is less than $30,000, the remaining funds will be paid in accordance with *cy pres* to the San Francisco Legal Aid Society – Employment Law Center.  There is a substantial nexus between the proposed *cy pres* recipient and the interests of the Class Members in the instant matter.  *Lane v. Facebook, Inc.,* 696 F.3d 811, 821 (9th Cir. 2012), *cert. denied,* 134 S. Ct. 8, 187 L. Ed. 2d 392 (U.S. 2013); *see* Mullan Decl., ¶4).

### D.    Plan of Distribution to Class Members

Distributions to Class Members will be made from the remainder of the Settlement Fund after deductions are made for the Settlement Administrator's reasonable costs, court-approved attorney's fees and costs, court-approved service payments to the Representative Plaintiffs, and the $25,000 reserve fund – i.e., the Payout Fund (Joint Stipulation of Collective and Class Action Settlement and Release, Dkt. No. 223-2, §§ I.V., III.B., III.F.1).  The Payout Fund, in combination with the $25,000 reserve fund, is estimated to be at least $5,417,000 (Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Costs and Expenses, Dkt. No. 227, p.6). Class Members are not required to submit claims or take any other affirmative action to be entitled to their shares of the Payout Fund.

The Agreement sets forth a Plan of Distribution for distributing the Payout Fund among Participating Class Members who do not timely opt out (Joint Stipulation of Collective and Class Action Settlement and Release, Dkt. No. 223-2, § III.F.1).  Specifically, the Payout Fund will be distributed among participating Class Members on a modified *pro rata* basis based on weeks worked as a Service Specialist within the respective class periods.  A workweek multiplier of 1.5 will be applied for weeks worked by FLSA Opt In Class Members during the FLSA Opt In Class

---

[5]    Since no Class Members opted out, all Class Members are Participating Class Members.

1   Period (*id.*, at III.F.1.d.).

2        The Plan of Distribution is intended to more highly compensate claims under the FLSA

3   for weeks worked by FLSA Opt in Class Members during the FLSA Opt in Class Period.  In

4   Class Counsel's judgment, the FLSA claims have significantly higher potential value, based on

5   Class Counsel's review and analysis of the relative strengths, risks, and potential recoveries

6   associated with the various claims in the Litigation (*see* Plaintiffs' Motion for Preliminary

7   Approval of Class and Collective Action Settlement, Dkt. No. 223, p. 6).  The FLSA multiplier

8   takes into account the facts that (1) the court conditionally designated an FLSA Collective Action

9   in this case in August 2013; (2) the "similarly situated" standard under Section 216(b) is arguably

10  more lenient than the class certification standards under Fed. R. Civ. P. 23, *see Ramirez v.*

11  *Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1203 (N.D. Cal. 2013) (Breyer, J.) ; and (3) liquidated

12  damages are available under the FLSA but not under all of the state laws at issue.  The FLSA

13  multiplier also takes into account the fact that the 580 FLSA Opt In Class Members have already

14  taken affirmative steps to participate in the FLSA claim and could pursue their FLSA claims in

15  separate actions.

16       As regards what is otherwise a straight *pro rata* method for distributing the Payout Fund

17  on the basis of the number of qualifying weeks worked by each Participating Class Member, in

18  light of the types of claims and potential recoveries and associated risks at issue, the Plan of

19  Distribution cannot be said to significantly prejudice or favor any segment(s) of the Class relative

20  to any other segment(s) of the Class.

21       **E.    Release of Claims**

22       The release in the Agreement provides that all Class Members who do not opt out will

23  release Ecolab from all claims for:

24           wages, statutory and civil penalties, damages and liquidated
             damages, interest, fees and costs that were or could have been
25           alleged and whether known or unknown under the FLSA and/or
             Colorado, Illinois, Maryland, Missouri, New York, North Carolina,
26           Washington or Wisconsin law, arising out of the allegations of the
             Complaint during the applicable Class Periods set forth above,
27           including, but not limited to:  (1) claims for failure to pay
             minimum wage and/or overtime compensation for all hours

28

worked; (2) claims related to alleged meal period violations; (3) wage statement claims; (4) any other claims for penalties, premium pay or other compensation or liquidated damages of any nature whatsoever, arising out of any conduct, events, or transactions occurring during the Class Period including without limitation, interest, attorneys' fees and costs for the time periods described above through the date of preliminary approval; and (5) claims for violation of the FLSA or any other federal or state wage or compensation laws through the date of preliminary approval.

(Joint Stipulation of Collective and Class Action Settlement and Release, Dkt. No. 223-2, § III.P.1)  The release by Class Members is limited to wage and hour claims that were alleged in the Complaints in the action or arise from facts alleged in the Complaints.

In addition to these releases, the Agreement also provides that Representative Plaintiffs who apply for and are awarded a Court-approved service payment must execute and provide to Defendant individual, general releases (*id.*, at § III.P.5).

## F.    Settlement Administration

### 1.    Class Notice

Pursuant to the Order Granting Motion for Preliminary Approval, on September 4, 2015, the Settlement Administrator mailed the approved Class Notice to putative Class Members identified by Ecolab (Patton Decl., ¶¶ 3-4).  Consistent with the Agreement and Order Granting Motion for Preliminary Approval, the Settlement Administrator searched for more recent addresses, took all reasonable steps to obtain correct addresses for Class Members whose Notices were returned undeliverable, and re-mailed Notices to Class Members for whom new addresses were located (*id.*, at ¶¶ 3 and 7).  The Settlement Administrator also established a website and toll-free phone number to respond to Class Members' questions regarding the settlement (*id.*, at ¶¶ 5-6).

### 2.    There Were No Opt Outs.

Class Members who wished to opt out of the Settlement were required to submit a written and signed request for exclusion by the deadline specified in the Agreement and provided in the Class Notice (Joint Stipulation of Collective and Class Action Settlement and Release, Dkt. No. 223-2, § III.J.2; Order Granting Motion for Preliminary Approval, Dkt. No. 226, p.6).  A request

7

1   for exclusion was timely if it was mailed to the Settlement Administrator and postmarked by

2   ///

3   October 19, 2015(*see* Joint Stipulation of Collective and Class Action Settlement and Release,

4   Dkt. No. 223-2, § III.J.2; Patton Decl., ¶ 9).

5        The Settlement Administrator received two requests for exclusion; in each case, the Class

6   Member provided a written request to rescind the opt out (Patton Decl., ¶ 9).  Accordingly, out of

7   a Class of 1,053 members, no Class Member has excluded him or herself from the settlement.

8            **3.    Counsel is Not Aware of any Class Member Objections to the
9                    Settlement or any of its Terms.**

10       Non-Opt Out Class Members who wished to object to the Settlement could do so by

11  submitting written objections to the Court by October 19, 2015, the deadline specified in the

12  Agreement and provided in the Class Notice (Joint Stipulation of Collective and Class Action

13  Settlement and Release, Dkt. No. 223-2, § III.J.1; Patton Decl., ¶ 10).  Class Counsel is not aware

14  of any objections sent to and filed by the Court (Mullan Decl., ¶ 3).  Class Counsel did not

15  receive any objections from any Class Member, whether formal or informal (*ibid*.).  Additionally,

16  no Class Member submitted any objection to the Settlement Administrator (Patton Decl., ¶10).

17           **4.    One Class Member Challenged the Number of their Applicable
18                   Workweeks Printed on their Notice, which Challenge was, upon
                     Review, Granted.**

19       Class Members were given the opportunity to challenge the number of applicable

20  workweeks printed in their Notice by submitting a written letter with documentation postmarked

21  by September 18, 2015.  The Settlement Administrator received one such challenge to the

22  number of workweeks printed in the Class Member's Notice.  The Settlement Administrator

23  forwarded this challenge to counsel for the parties, who, upon review, confirmed that the

24  challenge should be granted (Patton Decl., ¶ 8).

25  **III.    DISCUSSION**

26       **A.    Final Confirmation of Class Certification is Appropriate.**

27       The Order Granting Motion for Preliminary Approval certified the eight state law classes

28  for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointed

1   the Named Plaintiffs as the representatives for the state classes, and appointed Plaintiffs'

2   attorneys as Class Counsel (Dkt. No. 226).  The Court found, for purposes of settlement, that the

3   Class meets all of the requirement for maintenance of a class action under Rule 23(a) and Rule

4   23(b)(3) (*id.*).

5        Notice of the class action was directed to all Class Members in a form and manner that

6   complied with Rule 23 (*see supra* § II.F.1).  Class Counsel are not aware of any objections by a

7   Class Member to any aspect of the Court's order preliminarily approving the settlement and none

8   of the 1,053 Class Members opted out.

9        For these reasons, and for the reasons set forth in Plaintiffs' Motion for Conditional

10   Certification of State Classes and Preliminary Approval of Class Action Settlement (Dkt. No.

11   223), the Court should confirm the certification of this action as a settlement class action and the

12   appointment of Plaintiffs as the Class Representatives.

13       **B.**     **Final Settlement Approval is Appropriate.**

14        In order to approve a settlement that would bind class members, the court must find, after

15   notice and a hearing, that the proposed settlement is "fair, reasonable, and adequate."  Fed. R.

16   Civ. P. 23(e)(2).

17        "[T]here is a strong judicial policy that favors settlements, particularly where complex

18   class action litigation is concerned."  *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir.

19   2008).  "Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's

20   policy favoring settlement, particularly in class action law suits."  *In re Omnivision Tech., Inc.*,

21   559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008) (Conti, J.).  While "[t]he court must find that the

22   proposed settlement is fundamentally fair, adequate, and reasonable" (*id.*, at 1040), "the court's

23   inquiry is ultimately limited 'to the extent necessary to reach a reasoned judgment that the

24   agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

25   parties.' . . .  The court, in evaluating the agreement of the parties, is not to reach the merits of the

26   case or to form conclusions about the underlying questions of law or fact."  *Ibid.*  (citation

27   omitted; quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San*

28   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

1   ///

2   ///

3           **1.      The settlement is entitled to a strong presumption of fairness.**

4           "When seeking final approval, plaintiffs may establish a presumption of fairness by

5   demonstrating: '(1) [t]hat the settlement has been arrived at [through] arm's-length bargaining;

6   (2) [t]hat sufficient discovery has been taken or investigation completed to enable counsel and the

7   court to act intelligently; (3) [t]hat the proponents of the settlement are counsel experienced in

8   similar litigation; and (4) [t]hat the number of objectors or interests they represent is not large

9   when compared to the class as a whole." *Trew v. Volvo Cars of N. Am., LLC*, No. 05-1379, 2007

10  WL 2239210, *2 (E.D. Cal. Jul. 31 2007) (quoting Alba Conte and Herbert B. Newberg,

11  Newberg on Class Actions § 11:41 (2006)); *see Wren v. RGIS Inventory Specialists*, No. 06-

12  05778, 2011 WL 1230826, *6 (N.D. Cal. Apr. 1, 2011) (Spero, M.J.) (initial presumption of

13  fairness is usually established if settlement is recommended by class counsel after arm's-length

14  bargaining).

15          In this case, as discussed more extensively in Plaintiffs' Motion for Conditional

16  Certification of State Classes and Preliminary Approval of Class Action Settlement (Dkt. No.

17  223, pp. 3, 18-20) and in Plaintiffs' Motion for Attorney's Fees (Dkt. No. 227): (1) Class Counsel

18  are highly experienced in class action wage and hour litigation; (2) Plaintiffs (and Defendant)

19  conducted extensive discovery, investigation, and motion practice that allowed Class Counsel to

20  act intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at

21  the settlement through arms-length bargaining involving competent and experienced counsel.  In

22  addition, there are no objectors to the settlement (Mullan Decl., ¶3; Patton Decl., ¶10).

23          For these reasons, there is a strong presumption that the proposed settlement is fair to the

24  Class. *Trew*, 2007 WL 2239210 at *2; *see Wren*, 2011 WL 1230826 at *6.

25          **2.      The settlement is fair, reasonable, and adequate.**

26          The Ninth Circuit has identified several factors the district court should consider, as

27  applicable, in reaching its determination of whether a proposed class action settlement is fair,

28  reasonable, and adequate.

10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. CV 12-03001 JD

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

All the relevant factors identified by the Ninth Circuit weigh in favor of settlement approval in this case.

> **a.      The strength of Plaintiffs' case and the risk of maintaining class action status throughout the trial.**

Plaintiffs are convinced of the strengths of their claims. However, Defendant is equally adamant about the strength of its defenses. As is clear from the extensive motion practice in this case, including the three motions that were fully briefed and set for hearing prior to the settlement agreement was reached, Plaintiffs' claims and Defendant's defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiffs' claims and theories of liability and, by extension, to Plaintiffs' entitlement to recover damages, liquidated damages and penalties, and/or the proper measure of damages.

For example, Plaintiffs would have had to defend against Defendant's asserted affirmative defense that its Service Specialists qualify for the exemption under Section 7(i) of the FLSA, as set forth in Defendant's motion for partial summary judgment (Dkt. No. 177). Defendant also moved for partial summary judgment regarding whether certain state law claims asserted by Plaintiffs expressly except companies covered by the FLSA (*ibid.*). While Plaintiffs believe their arguments, as set forth in their opposition to Defendant's motion, are very strong and should have been successful, Plaintiffs were not guaranteed to prevail.

Plaintiffs also faced significant risks in obtaining class certification of the state classes, and in maintaining conditional certification of the FLSA class. Plaintiffs had filed a motion for

1    certification of the state law classes, which Defendant opposed with hundreds of pages of

2    argument and evidence (Dkt. Nos. 158 and 169).  Defendant had also filed a motion for

3    decertification of the conditionally certified FLSA class.  The motions presented substantial legal

4    and factual uncertainty regarding whether Plaintiffs could proceed as a class or collective action.

5        The risks and uncertainties facing the claims of Plaintiffs and the Classes weigh in favor

6    of settlement approval.

7                    **b.    The risk, expense, complexity, and likely duration of further**
                             **litigation.**
8

9        Whatever the strength of their claims, Plaintiffs nonetheless face numerous obstacles to

10   recovery, including likely challenges to their use of representative testimony and expert witnesses

11   to establish class wide liability and aggregate damages, challenges to Class Members' testimony

12   concerning how many hours they worked, challenges to Plaintiffs' methodology for calculating

13   damages and penalties, and having to defend against Defendant's exemption defenses.

14       The litigation regarding class certification had been, and would continue to have been,

15   expensive and time consuming.  Assuming the Court certified a class action for trial, Defendant

16   could have appealed from a class certification order, which might have delayed the proceedings

17   considerably and been very expensive.

18       Additionally, if this case had proceeded to trial, the time and expenses associated with

19   trial preparation would have been considerable.  The parties would have had to prepare expert

20   reports and conduct expert discovery, prepare and defend against motions *in limine*, draft trial

21   briefs, prepare deposition designations and trial exhibits, and, ultimately, try the case.  A class

22   action trial in this case would be manageable, but it would also be complex, expensive, and

23   extremely time-consuming.  Even if Plaintiffs obtained a favorable verdict and judgment on their

24   claims, they would face additional expenses and delay if, as is likely, Defendant were to appeal.

25       Taken together, these considerations support approval of the settlement.

26                    **c.    Settlement amount.**

27       In determining whether a settlement is fair, reasonable, and adequate, the court must

28   consider the amount offered in settlement.  *Officers for Justice*, 688 F.2d at 625.  Under the terms

1   of the Agreement, Ecolab is required to make a total settlement payment of $7,500,000. That

2   amount is non-reversionary. Class Counsel have estimated that the average gross settlement

3   amount is approximately $5,000 per Class Member (*see* Plaintiffs' Motion for Attorneys' Fees

4   and Costs, Dkt. No. 227, p.6, fn 3). This amount far exceeds the average settlement value per

5   plaintiff of recent wage and hour class action settlements, according to a recent study from

6   NERA Economic Consulting presented by LexisNexis.[6] The settlement figures are significant

7   amounts in absolute terms, and they are also significant amounts when viewed in the context of

8   the case, where the pest-exterminator Class Members are not highly-compensated employees (*see*

9   Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment, Dkt. No. 186, p.12,

10  fn 43, detailing total annual compensation for Named Plaintiffs ranging between $32,000 and

11  $46,000). Moreover, the $7.5 million settlement amount is 96% of the amount Ecolab contended

12  at mediation was its maximum realistic exposure in the case (Finberg Decl. ISO Motion for

13  Preliminary Approval, Dkt. No. 223-1, ¶ 23).

14       Ecolab will pay the entire $7,500,000 settlement amount, plus applicable payroll taxes on

15  amounts designated as wages (Settlement Agreement III.B.). Class Members are not required to

16  submit claims or take any other action to receive their settlement shares, which should result in a

17  much higher percentage of the Class receiving money under the Settlement than would be the

18  case if some affirmative action were required. After 120 days, if any Class Member checks are

19  not cashed, and the amount of remaining funds is greater than $30,000, those funds will be

20  distributed on a *pro rata* basis to Class Members who did cash their checks. If the remaining

21  funds are less than $30,000, or after one redistribution has been accomplished, those funds will

22  be donated to the non-profit *cy pres* recipient, the San Francisco Legal Aid Society –

23  
_____

24       [6]  As stated in Plaintiffs' Motion for Attorneys' Fees and Costs, Dkt. No. 227, the study,
     entitled "Trends in Wage and Hour Settlements: 2015 Update," and published July 14, 2015,
25   reported that the overall average per plaintiff settlement value during the period 2007-2015 was
     $1,097. However, the average settlement value per plaintiff declined from a peak of $1,475 in
26   2011 to $686 in 2014, and to just $353 through the first three months of 2015 (*available at*
     http://www.nera.com/content/dam/nera/publications/2015/PUB_Wage_and_Hour_Settle
27   ments_0715.pdf).

28

1  Employment Law Center (Joint Stipulation of Collective and Class Action Settlement and

2  Release, Dkt. No. 223-2, § III.F.3(c)-(e)).

3          These amounts are particularly meaningful when one considers the serious risks and

4  uncertainties Plaintiffs and the classes faced in the litigation with regard to class certification,

5  whether Defendant will succeed on its affirmative defenses under the FLSA, and whether

6  Plaintiffs will succeed in proving liability for damages, liquidated damages, and penalties, as well

7  as the amounts of damages and penalties they might recover in the event that liability were to be

8  established.  Simply put, this is a case involving many difficult claims and risks.

9          Considering the risks and uncertainties in the litigation, including the risks that class

10  certification might be denied, the risks of losing some or all claims on the merits, the risks of

11  otherwise not recovering all the monetary relief sought, and the certain delay in any recovery by

12  not settling, the $7,500,000 Settlement Fund payment provided for by the Settlement represents

13  very good value for the Class and weighs strongly in favor of final settlement approval.

14                    **d.        Extent of discovery and investigation completed.**

15          This factor examines the extent of discovery the parties have completed and the current

16  stage of the litigation to evaluate whether "the parties have sufficient information to make an

17  informed decision about settlement."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

18  1239 (9th Cir. 1998).

19          As detailed in Plaintiffs' Motion for Preliminary Approval Brief and in the accompanying

20  Declaration of James M. Finberg (Dkt. Nos. 223 and 223-1)), Plaintiffs (and Defendant) have

21  conducted extensive discovery and investigation.  Discovery and investigation have included, but

22  not been limited to, the following: interviews with the class representatives and hundreds of

23  collective action members, requests for production of documents and review of the over 150,000

24  pages of documents produced by Defendant, and propounding and responding to written

25  discovery, including interrogatories and requests for admission (Finberg Decl. ISO Motion for

26  Preliminary Approval (Dkt. No. 223-1), ¶¶ 15-16).  Plaintiffs took seven depositions of five of

27  Ecolab's corporate designees pursuant to Rule 30(b)(6) and defended the depositions of 31

28  plaintiffs and collection active opt-ins (*id*., at ¶ 17).

14

1    Given the substantial scope and amount of discovery and investigation completed,

2    Plaintiffs had more than sufficient information to make an informed decision about settlement.

3    This factor weighs heavily in favor of final settlement approval.

### e.   Experience and views of counsel.

5    As detailed in Plaintiffs' Motion for Attorneys' Fees and Costs, and in the accompanying

6    attorney declarations, Class Counsel have had extensive experience and success litigating, trying,

7    and settling wage and hour class actions (Motion for Attorneys' Fees and Costs, Dkt. No. 227,

8    p. 12; Declaration of James Finberg, Dkt. Nos. 223-1 and 227-1; Declaration of Jeffrey Lewis,

9    Dkt. No. 227-2; Declaration of John Mullan, Dkt. No. 227-3; Declaration of Robert Nelson, Dkt.

10   No. 227-4; Declaration of Justin Swartz, Dkt. No. 227-5; Declaration of Michael Sweeney, Dkt.

11   No. 227-6).  Class Counsel are very knowledgeable about the strengths, weaknesses and potential

12   value of the Class's claims (Finberg Decl. ISO Preliminary Approval of Settlement, Dkt. No.

13   223-1, ¶¶ 23-24.)  Class Counsel believe that the amount of the settlement is "fair, reasonable,

14   and adequate," and that "[t]aking into account the risks of continuing with further litigation . . . ,

15   the proposed $7.5 million settlement easily falls within the range of possible settlement approval .

16   . . ." (*Id.*, at ¶ 24.)  Class Counsel's experience and view of the settlement are factors weighing in

17   support of final settlement approval.  *See, e.g.*, *Wren*, 2011 WL 1230826 at *10.

### f.   Class Members' reactions to the proposed settlement.

19   Out of approximately 1,053 Class Members, no Class Member has submitted any

20   objections and no Class Member has ultimately opted out.[7]  The absence of objections and opt

21   outs are a strong indication that the Class has a favorable view of the settlement.  This factor too

22   weighs in favor of final settlement approval.  *Officers for Justice*, 688 F.2d at 625; *Nat'l Rural

23   Telecomm. Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence

24   of a large number of objections to a proposed class action settlement raises a strong presumption

26   ---

[7]    As noted above, *supra*, p. 1 at fn. 3, two Class Members initially sought to opt out, but later sent written notice to the Settlement Administrator to rescind their opt outs and to participate in the settlement.

1  that the terms of a proposed class action settlement are favorable to the class members"; *see also*

2  *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-1365, 2010 WL 1687832, at * 14 (N.D. Cal.

3  Apr. 22, 2010) (Wilken, J.) (citing *Nat'l Rural Telecomm. Cooperative*).

4          To conclude, the proposed settlement is presumptively fair, and all the relevant factors set

5  forth by the Ninth Circuit for considering whether to approve a class action settlement weigh in

6  favor of granting final approval to the proposed settlement in this case.  Therefore, the Court

7  should grant final approval to the settlement.

8  **V.      CONCLUSION**

9          For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant their

10  Motion for Final Approval and for Entry of Judgment, enter the proposed order that has been

11  agreed to by the Parties and submitted to the Court, and enter judgment.

12  DATED:  November 3, 2015                     Respectfully submitted,

13                                               RUDY, EXELROD, ZIEFF & LOWE, LLP

14

15                                               By: _____*/s/ John T. Mullan*_____
                                                     JOHN T. MULLAN
16                                                   STEVEN G. ZIEFF
                                                     DAVID A. LOWE
17                                                   JOHN T. MULLAN
                                                     MICHELLE G. LEE
18                                                   RUDY, EXELROD, ZIEFF & LOWE, LLP
                                                     351 California Street, Suite 700
19                                                   San Francisco, CA  94104
                                                     Telephone: (415) 434-9800
20                                                   Facsimile:  (415) 434-0513

21                                                   JAMES M. FINBERG
                                                     EVE H. CERVANTES
22                                                   CONNIE K. CHAN
                                                     ALTSHULER BERZON LLP
23                                                   177 Post Street, Suite 300
                                                     San Francisco, CA  94108
24                                                   Telephone: (415) 421-7151
                                                     Facsimile:  (415) 362-8064
25
                                                     ROBERT S. NELSON (SBN 220984)
26                                                   NELSON LAW GROUP
                                                     345 West Portal Avenue, Suite 110
27                                                   San Francisco, CA  94127
                                                     Telephone: (415) 702-9869
28                                                   Facsimile:  (415) 592-8671

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. CV 12-03001 JD

1

2    JUSTIN M. SWARTZ (*Pro Hac Vice*)
     OUTTEN & GOLDEN LLP
3    3 Park Avenue, 29th Floor
     New York, NY 10016
4    Telephone: (212) 245-1000
     Facsimile: (646) 509-2057

5    MICHAEL J.D. SWEENEY (*Pro Hac Vice*)
     GETMAN & SWEENEY, PLLC
6    9 Paradies Lane
     New Paltz, NY 12561
7    Telephone: (845) 255-9370
     Facsimile: (845) 255-8649

8
     Attorneys for Plaintiffs NICK CANCILLA,
9    GREG JEWELL, DAVID BEAUSOLEIL,
     PATRICK SWEENEY, LUCIO FLORES,
10   THOMAS JENNISON, MICHAEL
     EMANUEL, ROBERT BIRCH, KENNETH
11   FORBES, BRIAN O'NEIL, and FREDERICK
     SIMON, and all others similarly situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. CV 12-03001 JD